**ALLEN et al. v. NEW YORK, P. & N. R. CO. et al.**

(Circuit Court of Appeals, Fourth Circuit, October 19, 1926.)

No. 2401.

**1. Courts ⊜⟶327.**

Under Judicial Code, § 24, par. 1 (Comp. St. § 991), suits involving controversy not exceeding $3,000 may not originally be brought in federal court.

**2. Removal of causes ⊜⟶25(1).**

Suit cannot be removed to federal court because facts arise under federal laws, unless it appears from plaintiff's well-pleaded statement of his own case.

**3. Removal of Causes ⊜⟶19(5).**

Suit arising under a law to regulate commerce is removable to federal court, under Judicial Code, § 24, par. 8 (Comp. St. § 991), irrespective of amount involved.

**4. Removal of causes ⊜⟶25(1).**

Declaration on common counts in assumpsit for money due, with itemized accounts annexed thereto showing recovery is based on federal law, *held* removable to federal court under Judicial Code, § 24, par. 8 (Comp. St. § 991), in view of Code Va. 1919, § 6090, requiring declaration in assumpsit to contain itemized account.

**5. Removal of causes ⊜⟶25(1).**

If, on *plaintiff's original pleading, case is not removable, it becomes so whenever in its progress pleading is amended or supplemented,* to show that suit is removable.

**6. Carriers ⊜⟶188.**

Where tariff provided carload rates for strawberries shipped in refrigerated cars, shipper paying carload rate transportation, though not loading car to maximum, must pay flat rate icing charges thereon.

**7. Appeal and error ⊜⟶249.**

In federal cases in which jury trial is waived, exception should be taken and reserved as though trial had been to jury.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Separate suits in state court by William F. Allen and W. Herbert Hall, copartners trading under the firm name and style of William F. Allen & Co. and by Riley U. Lecato, against the New York, Philadelphia & Norfolk Railroad Company and others, removed to federal court and consolidated for trial. Judgment for defendants, and plaintiffs bring error. Affirmed.

James E. Heath, of Norfolk, Va. (Turlington & Doughty, of Accomac, Va., on the brief), for plaintiffs in error.

George R. Allen, of Philadelphia, Pa. (Thomas H. Willcox, of Norfolk, Va., on the brief), for defendants in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. The plaintiffs in error, plaintiffs below, seek to recover from the defendants in error, defendants in the District Court, certain sums which they say they were wrongfully compelled to pay as icing charges on crated strawberries shipped by them. The parties will be designated as the shippers and the railroads, respectively.

The Motion to Remand.

[1-3] Originally Allen & Co. and Lecato brought separate suits against the railroads in the circuit court for Accomac county, Va. They were removed by the defendants to the federal court, and by consent were there consolidated and tried together; all this, however, after the shipper's motions to remand had been severally overruled. To this refusal of a remand, error is assigned. The declarations were upon the common counts in assumpsit, and sought to recover money said to be due and owing the shippers by the railroads. To these declarations were annexed itemized accounts. They set forth that the railroads were engaged in interstate commerce as common carriers for hire, and had as such received from the shippers sundry crates of strawberries for transportation from diverse points in Delaware, Maryland, and Virginia to various places in Pennsylvania, New York, New Jersey, Connecticut, and Massachusetts; that, prior to such receipt of the goods in question, the railroads had filed their tariffs, specifying their charges for such transportation with the Interstate Commerce Commission; and that such tariffs had been approved by the Commission. It was further alleged that the railroads compelled the shippers to pay larger sums than such tariffs authorized. In every instance it was stated that such alleged excessive sums were exacted as payment for interstate transportation.

As the amount in controversy in neither of the suits exceeded $3,000, they could not have been originally brought in the federal court under any grant of jurisdiction found in the first paragraph of section 24 of the Judicial Code (Comp. St. § 991). The railroads, however, say that each of the suits arose under a law to regulate commerce, and by virtue of paragraph 8 of the section mentioned, could have been instituted in the District Court, irrespective either of the amount in controversy or the citizenship of the parties. The shippers do not question that the removals were properly made, if in a legal

sense the suits were brought under any act to regulate commerce, but they say that such was not the case. Their view is that all their declarations disclosed were suits in assumpsit to recover a money indebtedness to repay which, a promise was implied in law. In what they say was their own statement of their own case, no reference was made to any law of the United States. They, of course, do not deny that their right to recover depends upon the construction which should be given to certain tariffs which, as required by federal law, the railroads had filed with the Interstate Commerce Commission.

Their contention is that such fact is altogether immaterial to any question of jurisdiction of the District Court. They cite in support of their position such cases as Chappell v. Waterworth, 155 U. S. 102, 15 S. Ct. 34, 39 L. Ed. 85, in which it is said in substance that a suit cannot be removed because it arises under the laws of the United States, unless that fact appears from the plaintiff's well-pleaded statement of his own case, unaided by any forecast he may make of what defense his adversary may set up. There is no question that such is the law, but is it applicable to the instant case? The shippers say it is, because, according to them, the only pleading they filed was their declaration proper, which, in and of itself, gave no hint that their claim had its origin in any federal statute. A declaration upon the common counts in assumpsit is in Virginia good against demurrer, even when the account which the statute requires to be annexed to it shows that the plaintiff has no legally maintainable claim. George Campbell Co. v. Angus & Co., 91 Va. 438, 22 S. E. 167.

But is it not, for all that, a necessary part of the well-pleaded statement of plaintiff's own case, in the sense in which that phrase is used in the federal decision? Section 6090 of the present Code of Virginia says that, "in every action of assumpsit upon an account, the plaintiff *shall* file with his declaration an account stating distinctly the several items of his claim, unless it be plainly described in the declaration." (The italics are ours.) As already stated, a defendant may not attack the sufficiency of such account by demurrer to the declaration, but his remedy is equally efficacious. If no account has been filed, or if that which has been filed does not furnish the defendant with the information to which he is entitled, he may call for an account or for a better one, as the case may be. If the court is of opinion that defendant's demand is reasonable, it directs the plaintiff to supply the deficiency, and, if the latter fails to do so, he will not be permitted to offer any evidence in

support of items not sufficiently described. George Campbell Co. v. Angus & Co., supra.

[4, 5] That is to say, the shippers in the instant case could not have gone into proof of their claim, unless they had filed such an account as they did. Under such circumstances, it is idle to contend that the account did not form part of the statement of their cause of action. Moreover, the account, whether it was a part of the original pleading of the shippers or not, was unquestionably filed by them before the railroads presented their petition for removal. By that time the shippers had voluntarily set up a removable case. It is well settled that if, upon a plaintiff's original pleading, a case is not removable, it becomes so whenever in its progress he amends that pleading, or so supplements it, as to show that the suit is in fact removable. Powers v. Chesapeake & Ohio Railway Co., 169 U. S. 92, 18 S. Ct. 264, 42 L. Ed. 673.

The argument of the shippers, in so far as it relies upon such cases as Chappell v. Waterworth, supra, rests upon a misapprehension of what was actually decided by them. In none of them was the plaintiff seeking to recover in virtue of any federal right of his. For example, Chappell asserted a title to the land from which he was seeking to eject Waterworth, which did not in any way come from or through the United States, and he did not rely upon any federal statute for its support. It is true that Waterworth was in possession under no claim of personal right, but solely because the United States had stationed him on the land in controversy; but that fact, in so far as it was material at all, was a part of his defense, and not of Chappell's attack. In the cases at bar, the shippers must recover, if at all, upon the rights given them by certain acts of Congress and proceedings of the Interstate Commerce Commission authorized thereby. It does not help the shippers that, had there been no such acts or proceedings, they could at common law have recovered from a common carrier any sums which had been unlawfully extorted from them; for in the cases which they now present the question whether there was any extortion, and, if so, how much, depends altogether upon the construction of the federally prescribed tariffs.

The learned court below rightfully denied the motion to remand.

## The Merits.

[6] The tariffs prescribing what a shipper must pay for the transportation in interstate commerce of crated strawberries in refrigerated cars specify two items which make up the

total. The first of these is for the transportation proper; the second, for the use of refrigerated cars and for the service involved in keeping them properly iced during transportation. The rate for transportation depends upon whether the berries are being shipped on the basis of carload lots or upon the basis of less than carload lots. If the shipment is upon the carload lot basis, the rate per hundred pounds is lower than it otherwise will be. In order, however, to secure the carload rate, the shipper must furnish for transportation a shipment of not less than 15,000 pounds weight, or must pay a charge equal to that which the railroads are entitled to demand for 15,000 pounds; that is to say, if the carload rate between two points should happen to be say $1.20 per 100 pounds, a shipper, in order to be entitled to carload rates, would be called upon to pay at least $180 per car.

It appears from the record and the shipper's brief in this case that many shippers believe that 15,000 pounds of crated strawberries are more than can be shipped in one car with due regard to sufficiency of ventilation and efficiency of refrigeration. In their view the strawberries are likely to arrive at their destination in better condition, if not more than 11,000 to 12,000 pounds of them be put in one car. The shippers therefore think it worth their while to pay the minimum rate for a car and and then put in it not exceeding 12,000 pounds. The practical result, of course, is that the transportation charge for 100 pounds of berries is higher than it would be had 15,000 pounds been loaded into one car. In the case already supposed of a carload lot rate of $1.20 per 100 pounds, a car will cost $180, even although the shipper puts only 12,000 pounds in it. If he does, the transportation will cost at the rate of $1.50 per 100 pounds. Now the rate for less than carload lots is only $1.33 per 100 pounds; so that, if other things were equal, the shippers would apparently save money by shipping in less than carload lots.

But other things are, from their point of view, not equal. If the shipments are in less than carload lots, not only do the shippers have to mark each crate, as they do not if the shipment is made on the carload lot basis, but, what is probably more important, they cannot require the railroads to put not more than 12,000 pounds in a car and they are exposed to whatever inconveniences may follow from their berries being in the same car with those of other people. As a practical matter, except apparently for some small shipments made by express, shippers, so far as the transportation charges are concerned, generally prefer to ship upon the carload lot basis. In the instant case the shippers admit that they were properly required to pay the carload lot rate for transportation, and they do not seek to recover any part of it.

The controversy is over the other item going to make up the total charge for transporting berries in refrigerator cars. If the berries were shipped upon the carload lot basis, the shipper is required to pay, in addition to the transportation rate, a flat charge per car for icing. If the shipment is on the less than carload basis, he pays for icing a charge which depends upon the quantity of ice actually used for or upon his shipment. In the cases at bar the charge so determined would be less than the flat rate per car which the shippers were required to pay, and the suits were brought to recover back the difference. Such claim is not sustainable, unless the shipments were made on the less than carload basis. It is clear that they were not. By the common consent of both parties the proper transportation rate to which they were subject was that applicable to shipments made on the carload basis, and to them alone. It follows that, even if it were open to us to review the merits of these cases with all the fullness for which the shippers contend, the judgments against them would necessarily have to be affirmed.

But have we upon this record anything approaching so free a hand? By written stipulation the parties waived a jury trial and submitted the determination of the facts to the judge. At the close of the testimony and of the oral arguments thereon, the judge took the facts and the law under advisement, with permission to the parties to file additional briefs. Up to this time the shippers had asked for no rulings upon the law, although the railroads had. Nearly four months later the judge made a number of special findings of facts, among others, that the crated strawberries in question were shipped upon the carload freight rate basis, and announced his conclusion of law that judgment should be entered for the railroads. The only exceptions taken, other than that to the refusal of the motion to remand, was to this entry of judgment and to the subsequent refusal of the court to strike it out. There was no exception taken to any of the special findings of fact on the ground that they were not supported by the evidence, nor indeed upon any ground. Under these circumstances it may well be questioned whether there is on the merits anything for us to review. Fleischmann Construction Co. v. United States, to Use of Forsberg (decided by Supreme Court March 1, 1926) 270

U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624; Humphreys v. Third National Bank, 75 F. 855, 21 C. C. A. 538; Edwards v. Robinson (C. C. A.) 8 F.(2d) 726.

[7] In cases in the federal courts in which a jury trial is waived in writing, the exceptions should be taken and reserved precisely as they would be, had the trial been to a jury of 12 men, instead of being before one man. The rule is simple, and the authorities cited, as well as many others, show that its observance must be enforced. In the instant case the failure to do so has resulted in no practical harm, for in any event the judgments below would have to be affirmed, and are.